BIESENTHAL, In re. See Cases Nos. 1,235 and 1,236.

---

## Case No. 1,395.

### In re BIGELOW et al.

[2 Ben. 469; [1] 1 N. B. R. 667, (Quarto, 202.)]

District Court, S. D. New York. June 23, 1868.

BANKRUPTCY—LIEN OF CREDITOR—BANK STOCK.

Where bankrupts, at the time of the adjudication in bankruptcy, were indebted to a bank, in which they severally owned stock, and the by-laws of the bank provided that the stock of stockholders should be liable for their debts to the bank: *Held*, that the bank had a lien upon the stock, and had the right to apply it toward such indebtedness, whether it was an indebtedness of the bankrupt firm, or of the individual stockholders.

[Cited in Knight v. Old Nat. Bank, Case No. 7,885.]

[See note at end of case.]

[In bankruptcy. In the matter of Edward Bigelow, David Bigelow, and Nathan Kellogg, composing the firm of E. & D. Bigelow, involuntary bankrupts. For further proceedings, see Case No. 1,396.]

[2] [By THEODORE B. GATES, Register:

[I, one of the registers in said court in bankruptcy, do hereby certify that in the course of the proceedings in said cause the following questions arose and were stated, and the facts in relation thereto agreed to by the

counsel for the opposing parties as follows, to wit: by Jacob H. Dubois, who appeared for Elijah Dubois, the assignee in bankruptcy of the above named bankrupt, and Peter Cantine, who appeared for the First National Bank of Saugerties, a creditor of said bankrupts, individually and as partners. The First National Bank was duly organized as a national bank in the year 1865, under the provisions of the act of congress, entitled "An act to provide a national currency secured by a pledge of United States bonds. and to provide for the circulation and redemption thereof," approved June 3, 1864, [13 Stat. 99.] That an adjudication in bankruptcy in the above matter, upon the petition of a creditor, was made against the above named bankrupts, individually and as copartners, on the 16th day of November, 1867. That on the said 16th day of November, 1867, and prior thereto for two years and upward, David Bigelow and Nathan Kellogg were each stockholders in said bank, and each owned twenty shares of the capital stock thereof, amounting to the sum of $2,000 each, and said stock was standing in their respective names on the books of said bank on the sixteenth day of November, and still so stands there. That on the 16th of November, 1867, David Bigelow was indebted to the said bank individually, the amount of a note which became due November 8, 1867, in the sum of $637.46, which still remains unpaid. On the 16th November, 1867, Nathan Kellogg was indebted to said bank individually upon notes which had matured at different times between October 15th and November 13th, 1867, in the sum of $2,971.22, which still continue due and unpaid; that the total liabilities of Nathan Kellogg individually to said bank on the said 16th day of November, 1867, were $8,048.41. That said bank is a creditor of said bankrupts as copartners to the amount of $14,745.28, of which amount the sum of $5,788.38 matured on the 6th day of October, 1867, and was due on and before the 16th day of November, 1867. The said bank claims to have a lien upon said stock so held by the said Nathan Kellogg and David Bigelow, and to apply the same towards the payment of the indebtedness to said bank as aforesaid, which was due on the 16th day of November last as aforesaid, and refuse to transfer said stock to the assignee of said bankrupts upon the books of said bank; that said bank stock has not been sold; that the bank claims such lien under and by virtue of the provisions of the by-laws of said bank.

[The assignee and other creditors of said bankrupts, on the other hand, claim that the bank has no such lien, that the by-laws, if valid, do not in fact create or give any lien or preference to said bank upon said stock, for the payment or security of such indebtedness or any part thereof: and if the by-laws do in terms give or contemplate a lien or preference in behalf of said bank over the other creditors, they are void and of no ef-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
[2] [From 1 N. B. R. 667.]

fect as being in contravention of the 35th section of the act of congress aforesaid, [13 Stat. 110; Rev. St. 5201,] under which the said bank was incorporated as aforesaid, and which section is as follows: "Sec. 35. And be it further enacted, that no association shall make any lien, or discount, on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith, and stock so purchased or acquired shall within six months from the time of its purchase, be sold or disposed of at public or private sale, in default of which a receiver may be appointed to close up the business of the association according to the provisions of this act."

[That, in the fifth clause of the articles of association of said bank, under which they were organized as a banking association, under the provisions of the act of congress aforesaid, it is provided, in the recital of the powers of the directors of said bank, that they shall, among other things, have power "generally to do and perform all the acts that it may be legal for a board of directors to do under the act aforesaid, and they shall also have the power to make all by-laws that it may be proper and convenient for them to make, under the said act, for the general regulation of the business of the association, and the entire management and administration of its affairs, which by-laws may prohibit, if the directors shall so determine, the transfer of stock owned by any stockholder who may be liable to this association, either as principal debtor or otherwise, without the consent of the board."

[That on the 17th day of April, 1865, the comptroller of the currency gave to said bank the usual certificate of its organization as a national institution, under and according to the requirement of the act of congress aforesaid; that on the 11th day of July, 1865, the directors of said bank passed the following resolution: "Resolved, that we adopt the articles of association of the old Bank of Ulster as by-laws." That the said articles of association so covered by said resolution as aforesaid, contain the following provisions:

["Sec. 3. This association shall not under any pretence loan money on a pledge of shares of the capital stock of the association, but this shall not be so construed as to prevent the association from applying the shares of any individual shareholder in manner hereinafter named, toward the payment of a bona fide debt, which said shareholder may owe to the association.

["Sec. 4. The association and the board of directors hereinafter mentioned shall have power (whenever any shareholder thereof shall owe a debt then due to the association and which shall have been due and unpaid for the space of three months) to give notice to such shareholder that if such debt be not paid and satisfied at the expiration of ten days from the time of such notice, the shares of the capital stock of this association held by such shareholder or standing in his name, or so much thereof as may be necessary, will be sold in satisfaction of such debt, and if at the expiration of said ten days the said debt of such shareholder shall remain due and unpaid, the board of directors hereinafter mentioned shall have full power and authority to proceed and sell the shares held by such shareholder, or such part thereof as shall be sufficient to pay such indebtedness, either at the board of brokers in the city of New York, or at public auction in the village of Ulster, and to appropriate the proceeds of the sale, if of sufficient amount, in satisfaction of such debt, and, if not of sufficient amount to pay the whole debt, then toward, and on account of, such indebtedness.

["Sec. 5. No shareholder of this association shall be permitted to transfer his share, or, receive a dividend or interest thereon, who shall owe to the association a debt, which shall have become due and have remained, for the space of one day, unpaid, until such debt be paid, unless by and with the consent of the board of directors of the association hereinafter mentioned, and any transfer made contrary to the provisions of this article shall be null and void.

["Art. 5, sec. 1. The board of directors shall cause suitable books to be kept for the registry and transfer of the shares of the association, and every transfer to be valid shall be made in such books and signed by the shareholder, or his attorney duly and specially authorized thereunto in writing.

["Sec. 2. No shares shall be transferred on which any call for an instalment of capital, or any interest on such instalment shall remain unpaid.

["Sec. 3. Every transfer shall be made and taken expressly subject to all the conditions and stipulations contained in these articles; and every person becoming a shareholder by such transfer shall in proportion to his shares succeed to all the rights and liabilities of prior shareholders.

["Sec. 4. The board of directors may close the transfer books at any time for a period not exceeding ten days, as the convenience of the association may require."

[The articles of association of said bank were signed, sealed and acknowledged by, among the other corporators, the said David Bigelow, Edward Bigelow, and Nathan Kellogg severally. As the bank claimed this lien upon the stock, the bank and the assignee agreed upon a statement of facts raising an issue of law, which the register adjourned with cause, giving the following opinion:

[Opinion of the Register:

[I am, therefore, of opinion, that under given circumstances, the national bank may take the shares of one of its stockholders even against his will, but whether the present is such a case, I have very serious doubt.

[The Bigelows, and Kellogg, were adjudicated bankrupts. as appears by the annexed papers. on the 16th day of November, 1867, and on the petition of the First National Bank of Saugerties. The indebtedness set out in the case agreed upon and hereto annexed had mostly accrued prior to that time. The assignee was not appointed until the 25th January, 1868.

[The articles of association vest in the board of directors power in certain cases to take certain specific measures to attach and enforce their lien; this lien does not proceed of its own vitality, but the officers of the bank must set it in motion, or they gain nothing by it. It is a right reserved in favor of the bank, if the bank elects to avail itself of it, in the prescribed mode. But if it does not, the debtor is not divested of his title, and if another claimant appears under authority of the law, after the bank might, but before it has taken any step to attach its lien, I doubt whether the second is not the superior claimant. Here the bank seems to have taken no action to establish its right to the stock in question. In the mean time the assignee, by operation of law, became vested with title to all the property, both real and personal, of the bankrupt. He interposes in behalf of the creditors, and claims this stock as part of the assets of the bankrupts. Opposed to this claim the bank sets up its dormant lien, which I think was terminated by the non-action of the bank itself; and the appointment of the assignee in bankruptcy.][3]

BLATCHFORD, District Judge. I think the bank has a lien upon the stock so held by Kellogg and Bigelow, and has the right to apply the same toward the payment of the indebtedness to the bank which was due on the 16th of November, 1867, as well the individual indebtedness as the copartnership indebtedness.

[NOTE. A similar decision was rendered by Mr. Justice Clifford in the circuit court for the Rhode Island district in 1871, in Knight v. Old Nat. Bank, Case No. 7,885; but the supreme court has since taken a different view of the question, in Bullard v. National Eagle Bank, 18 Wall. (85 U. S.) 589. In this case, the association was also organized under the act of June 3, 1864, (13 Stat. 99.) A by-law, duly authorized by the articles of association, made all debts due from stockholders a lien upon their stock. The trustee of a bankrupt stockholder, indebted to the bank, brought suit against the bank for refusing to allow a transfer of the stock until such indebtedness had been discharged. In the circuit court there was a division of opinion and, among others, the following question was certified to the supreme court: "Whether a national bank organized under and controlled by the act of 1864, can acquire a valid lien upon the shares of its stockholders by the articles of association or by-laws as proved in this case." Mr. Justice

Strong, delivered the opinion of the court, answering this question in the negative, on the ground of the prohibition contained in the thirty-fifth section of the act, (13 Stat. 110; Rev. St. § 5201,) and of the evident intention on the part of congress to relieve shareholders from the restriction imposed by the thirty-sixth section of the prior act of February 25, 1863, in omitting that section entirely from the substituted act of 1864. This thirty-sixth section made all debts due from shareholders to the association a lien upon their holdings, (12 Stat. 675.) Bullard v. National Eagle Bank, 18 Wall. (85 U. S.) 589. See, also, In re Keiler, Case No. 7,648.]

---

[3] [From 1 N. B. R. 667; the report from 2 Ben. 469, containing merely a condensed statement of the register's findings and opinion.]

